**George W. CRAWFORD, Appellant,**

v.

**DISTRICT OF COLUMBIA,**
et al., Appellees.

No. 04–CV–116.

District of Columbia Court of Appeals.

Argued Oct. 25, 2005.

Decided Jan. 19, 2006.

Eric L. Siegel, with whom Sergio F. Oehninger, Washington, DC, was on the brief, for appellant.

Mary T. Connelly, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, KRAMER, Associate Judge, and BELSON, Senior Judge.

KRAMER, Associate Judge:

The appellant, George W. Crawford, appeals from the trial court's orders denying him declaratory and injunctive relief and attorney's fees and costs following a jury trial on his claim under the District of Columbia Whistleblower Protection Act ("DCWPA" or "the Act"), D.C.Code § 1–615.51 *et seq.* (2001).[1] He asserts that the trial court erred in not awarding him declaratory and injunctive relief, as well as attorney's fees and costs. Concluding that he has misconstrued the statute, we affirm.

## I. The Factual Background.

The appellant, a former General Counsel of the D.C. Taxicab Commission ("the Commission"), filed a civil law suit against Lee Williams, Chair of the Commission, and the District of Columbia. In the complaint, the appellant alleged that his removal as General Counsel violated the DCWPA. The matter went to trial, and at its conclusion the jury returned a verdict by means of special interrogatories on the verdict form agreed to by both parties. The jury found (1) that the appellant made disclosures protected by the DCWPA; (2) that appellee Williams "took or threatened to take a prohibited personnel action against" the appellant; (3) that the appellant's "protected disclosure" was a "contributing factor" in his removal from the

---

1. The appellant also brought a corresponding free speech claim pursuant to 42 U.S.C. § 1983, but no arguments regarding that claim are pressed on appeal.

position of General Counsel; and (4) that the appellant's removal "would have occurred for legitimate, independent reasons even if [the appellant] had not made protected disclosures."[2] As indicated on the verdict form, given these answers, the jury had no need to address the issue of compensatory damages. The trial court thus entered judgment for the appellees.

Thereafter, the appellant filed post-trial motions with the court, including: (1) Post–Trial Motion to Amend Judgment and for Entry of Judgment for Declaratory and Injunctive Relief Based on Jury Verdict and (2) Motion for Award of Attorney's Fees and Costs. These motions raised essentially the same arguments for relief that the appellant now raises on appeal. The trial court ruled that the appellant was not entitled to relief because the jury found that he would have been dismissed from his employment for legitimate reasons independent of his "protected disclosures." On appeal, the appellant challenges the conclusion of the trial court.

## II. The Framework of the D.C. Whistleblower Protection Act.

In enacting the DCWPA, the Council found that "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal." D.C.Code § 1–615.51 (2001).[3] To that end, the DCWPA prohibits a supervisor from "threaten[ing] to take or tak[ing] a prohibited personnel action or otherwise retaliat[ing] against an employee because of an employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C.Code § 1–615.53. The Act defines a "prohibited personnel action" to include a list of various actions adverse to an employee, such as termination, demotion, or suspension. See D.C.Code § 1–615.52(5). Here, the allegation was that the appellant's supervisor took a "prohibited personnel action" against him for making a "protected disclosure."

One of several means of redress available to an employee whose supervisor has taken a "prohibited personnel action" is a civil lawsuit, the means that the appellant chose here.[4] See D.C.Code § 1–615.54. Section 1–615.54(a) provides various remedies for an employee who can show that he or she has been harmed due to violation of the DCWPA, including compensatory damages, injunctive relief, reinstatement and reasonable costs and attorney's fees. The Act also provides that "[a]s part of the relief ordered in [a] judicial proceeding," a supervisor "found to have violated § 1–615.53 [by taking a 'prohibited personnel action'] shall be subject to appropriate disciplinary action including dismissal" and "shall be subject to a civil fine not to exceed $1000." D.C.Code § 1–615.55(a), (b).

■ Section 1–615.54(b) of the Act lays out the shifting burden of proof that must be met to prevail in a civil lawsuit. It provides:

> In a civil action ... once it has been demonstrated by a preponderance of the evidence that an activity *proscribed* by § 1–615.53[5] was a *contributing factor* in

---

**2.** We note that the record before us contains no facts regarding the nature of the appellant's "protected disclosure," nor the reasons that the appellees provided for the decision to remove him as General Counsel.

**3.** All references to the D.C.Code in this opinion are to the 2001 Edition.

**4.** D.C.Code § 1–615.56 addresses administrative and arbitration proceedings.

**5.** The only way to make sense of this phrase is to read "proscribed" as "protected." Otherwise, the retaliation would be the "contribut-

the alleged prohibited personnel action against an employee, the burden of proof shall be on the employing District agency to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

(emphasis added). Thus, after a plaintiff makes a *prima facie* case that his "protected disclosure" was a "contributing factor" in his dismissal, the burden shifts to the defendant to show by clear and convincing evidence that the plaintiff's dismissal would have occurred for "legitimate, independent reasons" even if he had not engaged in activities protected under the Act.

▪ The most obvious reading of this provision would appear to be that if the jury finds that those legitimate and independent reasons exist, a plaintiff is barred from relief in the civil action. The appellant, however, argues against that position, interpreting the statute differently. Thus, we proceed to examine the statute as a whole.[6]

### III. Statutory Analysis.

▪ In arguing that the court erred, the appellant side-steps the jury's fourth finding—that regardless of his "protected disclosure," the Commission would have removed the appellant "for legitimate, independent reasons." Instead, he focuses only on the jury's first three findings, particularly its determination that the appellant's "protected disclosure" was a "contributing factor" in his removal from the position of General Counsel. Although conceding that he was not entitled to compensatory damages because the jury found legitimate, independent grounds for his termination, he nonetheless asserts that the "contributing factor" finding entitled him to declaratory and injunctive relief,[7] and consequently, to attorney's fees and costs. The government, on the other hand, argues that where a jury finds by clear and convincing evidence that there were legitimate and independent reasons for the adverse personnel action, the employee cannot be granted relief in the civil action.

The appellant relies upon *Kolstad v. American Dental Ass'n*, 323 U.S.App. D.C. 402, 411, 108 F.3d 1431, 1440 (1997), *rev'd on other grounds*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), for the proposition that "the [trial] court must ... follow the jury's factual findings with respect to a plaintiff's legal claims when later ruling on claims for equitable relief." Unlike *Kolstad*, however, the issue here is not what the jury found, but rather the significance within the statutory framework of what the jury found. Moreover, the appellant's arguments are unpersuasive, since, as we explain below, they are unsupported

---

ing factor" in the alleged "prohibited personnel action."

**6.** When interpreting a statute, we first look to its plain language. *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983). If we find sections of the statute capable of more than one reading, we then search for an interpretation that makes sense of the statute as a whole. *Id.* at 754. While the court may turn to the legislative history to confirm that its interpretation is consistent with the legislative intent, it shall conduct

such an analysis "only where there are 'persuasive reasons' for doing so." *Id.* at 754–55.

**7.** Since declaratory and injunctive relief are both forms of equitable relief, we address both under the rubric of equitable relief. *See McIntosh v. Washington*, 395 A.2d 744, 748 (D.C.1978) (holding that declaratory judgment is a form of equitable relief); *Hicks v. Allegheny East Conference Ass'n of Seventh-day Adventists, Inc.*, 712 A.2d 1021, 1022 (D.C.1998) (holding that a claim for injunctive relief was brought at equity).

by the plain language of the Act and the government's position is a fairer interpretation of the statute as a whole. Indeed, the issue before us is purely one of statutory construction.[8] Thus, we review the trial court's denial *de novo*. *See Feaster v. Vance*, 832 A.2d 1277, 1281–82 (D.C.2003) (citing *Cass v. District of Columbia*, 829 A.2d 480, 482 (D.C.2003)).

We conclude that the appellant's position is flawed in several respects. First, in arguing that he is entitled to equitable relief based upon the "contributing factor" finding, the appellant appears to equate that finding with a determination that he suffered an adverse action "because of [his] protected disclosure," the language used in the statutory provision defining what supervisors are prohibited from doing. *See* D.C.Code § 1–615.53. This position finds no support in the Act.

The DCWPA defines a "contributing factor" as "any factor which, alone or in connection with other factors, *tends to affect in any way* the outcome of the decision." D.C.Code § 1–615.52(a)(2) (emphasis added). There is nothing in this definition or in the term's use within the Act indicating that the Council intended a "contributing factor," standing alone, to be a sufficient basis for relief in a civil action.[9]

The appellant points to the statutory definition of a "prohibited personnel action," which includes "retaliating ... against an employee *because that employee makes a protected disclosure ...*." D.C.Code § 1–615.52(a)(5) (emphasis added). Based on this definition, he argues that the jury must have found that the causation requirement in § 1–615.53, prohibiting "personnel action [to] retaliate against an employee because of the employee's protected disclosure," had been satisfied. That argument, however, is at best conjecture. The verdict form did not ask whether the employer retaliated against him "because of" his protected disclosure, but whether his protected disclosure was a "contributing factor" to his removal as general counsel.

Furthermore, reading the "because" phrase into "prohibited personnel action" as it is used in § 1–615.53 would make the phrase "because of the employee's protected disclosure" in § 1–615.53 redundant.[10] Thus, the appellant's argument violates the basic principle of statutory interpretation that a court "must give effect to all of the provisions of [a statute], so that no part of it will be either redundant or superfluous." *See, e.g., Thompson v. District of Columbia*, 863 A.2d 814, 818 (D.C.2004) (quoting *Office of People's Counsel v. Public Serv. Comm'n*, 477 A.2d 1079, 1084 (D.C.1984) (citations omitted)). Considering the wording of § 1–615.53, it would not make sense—especially in light

8. We note that the appellant has provided us with virtually no factual information with respect to the evidence at trial or the instructions given to the jury (apart from the jury form).

9. Indeed, apart from the definition of "contributing factor" in § 1–615.52, there are only two other uses of the phrase in the Act. The first is found in the burden shifting provision of § 1–615.54. There, a finding that a "protected disclosure" was a "contributing factor" in an adverse personnel action is only the first step in a two-step process to determine whether or not a plaintiff is entitled to relief. The second use of the phrase is found in § 1–615.58(10), providing for discipline of a supervisor when, as here, there is an adjudicative finding that the "protected activity" was a "contributing factor" in an adverse personnel action.

10. Reading "prohibited personnel action" as used in § 1–615.53 in the manner that the appellant suggests would also render the phrase "or otherwise retaliate against an employee" in that section repetitive.

of the jury's express finding in this case that the appellant would have been fired for independent, legitimate reasons—to conclude that the jury found the requisite causation based merely upon its finding that Mr. Williams took or threatened to take a "prohibited personnel action" against the appellant.[11]

■ The appellant's second claim in challenging the trial court's order is that the burden-shifting provision in § 1–615.54(b) determines only the remedies available to the plaintiff, not liability under the Act. This is incorrect. The trial court's application of the burden-shifting framework to determine liability makes perfect sense in light of the plain meaning of § 1–615.53 discussed above. While an employee makes a *prima facie* case by showing that the "protected disclosure" was a "contributing factor" to the disciplinary action, a jury must find a direct causal link in order for there to be liability under § 1–615.53. This interpretation is consistent with all comparable federal legislation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (discussing the burden-shifting framework applied in Title VII disparate treatment cases).[12]

The appellant's sole argument in support of his interpretation of the burden-shifting paradigm is that the trial court's reading renders D.C.Code § 1–615.55 superfluous. *See District of Columbia v. Morrissey*, 668 A.2d 792, 798 (D.C.1995) ("each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous"). The plain language of the Act does not support this conclusion. Section 1–615.54(a) provides the relief that an *employee* may seek for a violation of the Act. In contrast, § 1–615.55, entitled "Disciplinary actions; fine," provides the penalties that a *supervisor* is subject to

11. Furthermore, the appellant's reading of the term "prohibited personnel action" in § 1–615.53 would render the third question on the verdict form superfluous. In question 2, the jury found that Mr. Williams "took or threatened to take a prohibited personnel action against the [appellant]." If that finding indicated that the appellees took the action because of the appellant's "protected disclosure," there would be no reason to then ask in the third interrogatory if the disclosure had been a "contributing factor" in the appellant's removal. If the "prohibited personnel action" had been taken because of the "protected disclosure," then the "protected disclosure," by definition, would have been a "contributing factor."

12. The appellant points out that the federal whistleblower statute has an explicit bar to corrective action when the defendant meets its burden in rebutting a plaintiff's *prima facie* case. The DCWPA lacks this language. Thus, the appellant argues that we should ignore case law applying the *McDonnell Douglas* burden shifting analysis to the federal whistleblower act and view this situation as more akin to a mixed motive case under Title VII. However, as the District pointed out at oral argument, in mixed motive cases Title VII specifically authorizes a court to take corrective action even when the respondent shows it would have taken the same action "in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5 (g)(2)(B) (2005). The DCWPA contains no such provision. Furthermore, courts have held that case law applying the federal whistleblower statute is instructive in interpreting similar state statutes. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950 (11th Cir. 2000) (holding that the district court properly applied the federal burden-shifting analysis to Florida's whistleblower act where there was no case law interpreting the act's causal language); *LaFond v. General Physics Servs. Corp.*, 50 F.3d 165, 172 (2d Cir.1995) (finding no error in the district court's application of the *McDonnell Douglas* analysis to Connecticut's whistleblower act). There is no evidence in the record indicating that the D.C. Council intended to apply a different liability standard in its whistleblower cases than that applied in all other federal and state whistleblower laws of which the court is aware.

should a court find that he or she violated the Act. Neither section is superfluous under the trial court's reading of the statute; both become applicable upon a showing that a defendant has violated § 1–615.53. Because there was no such finding in this case, the appellant is not entitled to relief and the court did not have the authority to sanction Mr. Williams.

A third flaw in the appellant's interpretation of the DCWPA is that the statutory framework for relief in the civil context contrasts with that provided for at the agency level. While a "contributing factor" is insufficient to trigger relief in an adjudicative proceeding, the statute provides that such a finding does require the agency to take disciplinary action. D.C.Code § 1–615.58(10) reads:

> Upon receipt of an adjudicative finding that a protected activity was a contributing factor in an alleged prohibited personnel action, the appropriate agency head shall immediately institute disciplinary action against the offending supervisor.

Thus, if an adjudicative fact-finder rules that a "protected activity" was a "contributing factor" to an adverse action taken by an "offending supervisor" against an employee, the supervisor is subject to agency discipline even if there was clear and convincing evidence that the action would have occurred for legitimate, independent reasons.

This distinction between the relief available in a civil lawsuit and the punishment required within the agency demonstrates that, in drafting this legislation, the Council for the District of Columbia specifically distinguished between the burden of proof that a plaintiff must meet to obtain relief through an adjudicative action and the lesser finding necessary to merit agency disciplinary proceedings. These different categories are consistent with the policy that a whistleblower statute shields an employee "only to the extent the record supports a finding that he would not have been disciplined except for his status as a whistleblower." *Carr v. Social Security Admin.*, 185 F.3d 1318, 1325 (Fed.Cir. 1999) (citing *Russell v. Department of Justice,* 76 M.S.P.R. 317, 320–21 (1997)).[13]

Finally, we note that an analysis providing that the "legitimate, independent reasons" finding bars compensatory damages, but not equitable relief, is unsupported by any portion of the statute. As the trial judge so well put it:

> [Section] 1–615.54(a) makes no distinction between these two arbitrary categories of relief Plaintiff has created. Indeed, the statute specifically states that all forms of relief are possible. Plaintiff cannot explain why certain types of relief are available to him under the jury's verdict, while others are not. The plainest reading of the statute, consistent with common sense, is that all the relief is available where Plaintiff prevails, and none is available when he does not.

Because the appellant's arguments regarding attorney's fees and costs are inherently dependant on his statutory interpretation, there is no need to address that issue. An analysis of the legislative history is also unnecessary because the plain language of the Act is unambiguous.

Accordingly, we

*Affirm.*

---

13.    See note 11, *supra.*