Ronald K. WATKINS, Appellant,

v.

DISTRICT OF COLUMBIA,
et al., Appellees.

Nos. 04–CV–1072, 04–CV–1186.

District of Columbia Court of Appeals.

Argued Oct. 10, 2006.
Decided March 27, 2008.

Robert E. Deso for appellant.

Holly Johnson, Assistant Attorney General for the District of Columbia; and Robert J. Spagnoletti, Attorney General at the time the brief was filed, Edward E. Schwab, Deputy Attorney General, at the time the brief was filed; and Mary T. Connelly, Assistant Attorney General, were on the brief for appellees.

Before REID and FISHER, Associate Judges, and PRYOR, Senior Judge.

REID, Associate Judge:

Appellant, Ronald K. Watkins, challenges post-trial orders issued after a jury verdict in his favor. His complaint against the District of Columbia and officers of the District of Columbia Department of Cor-

rections ("DOC") (collectively "the District" or "appellees") alleged a violation of the District of Columbia Whistleblower Protection Act ("WPA"), and intentional infliction of emotional distress, with respect to his termination from his position at DOC. He claims on appeal that, following the jury verdict, the trial court improperly rescinded its initial order directing his reinstatement and, instead, issued a second order replacing reinstatement with eighteen months of front pay and with back pay. He also argues that the trial court improperly reduced the amount of his fourth demand for attorneys' fees. In its cross-appeal, the District contends that the trial court erred by ordering it to pay front and back pay, and by failing to consider that Mr. Watkins did not attempt to mitigate his damages. We affirm the judgment of the trial court.

### FACTUAL SUMMARY

The record shows that on February 7, 2003, DOC terminated Mr. Watkins from his position as a Lead Legal Instruments Examiner. Events leading up to his termination apparently began to unfold in 2001. In September 2001, Mr. Watkins sent two memoranda to the Director of DOC protesting the blocking of his access to a computer program which enabled him to fulfill his duty to examine inmate files to ensure proper classification and accurate dates of release. Effective October 14, 2001, DOC detailed Mr. Watkins from his position at the District of Columbia Jail to the Lorton, Virginia Central Facility Records Office, "pending the outcome of an investigation." On October 20, 2001, Mr. Watkins sent the DOC Director a memorandum indicating, in part, that the records of two inmates were "grossly inaccu-

rate" concerning "jail credit," and hence, the inmates were scheduled to be released too early. Mr. Watkins gave copies of his October 30th memorandum to the District's Inspector General's office and to the Office of the United States Attorney for the District of Columbia.

In November 2001, DOC returned Mr. Watkins to his position at the jail. After a conversation with his assigned supervisor as to whether he had "learned his lesson," DOC placed Mr. Watkins in another temporary assignment at the end of November, this time at the Correctional Treatment Facility. From the end of 2001 to mid-June 2002, Mr. Watkins continued to provide information to DOC regarding inaccurate inmate files. The Inspector General's office launched investigations based on this information.

On June 25, 2002, DOC put Mr. Watkins on administrative leave with pay, based on his arrest for sexual solicitation on March 31, 2000. Subsequently, on July 19, 2002, DOC sent Mr. Watkins an Advance Notice of Proposed Removal based on his March 31, 2000 arrest. Mr. Watkins responded to the notice by claiming retaliation due to his identification of incorrect inmate files. Although a hearing officer found retaliation, DOC's Director nevertheless terminated Mr. Watkins in early February 2003. His termination was based upon his August 8, 2000 conviction on the sexual solicitation charge.

Prior to his termination, Mr. Watkins had filed a complaint against the District on September 17, 2002, alleging violation of the WPA. On October 22, 2003, following trial on his complaint, the jury returned a verdict in favor of Mr. Watkins and awarded him damages (for pain and suffering).[1] The trial court docketed the

---

1. The jury specifically found that Mr. Watkins "made a protected disclosure," which "was a contributory factor in the [personnel] action against [him]." The jury also specifically did

not "find by clear and convincing evidence that the alleged personnel action would have occurred for legitimate, independent reasons

judgment, reflecting the jury award in the amount of $35,000, on October 28, 2003. Subsequently, the trial court amended its judgment, in response to Mr. Watkins' motion, by rescinding Mr. Watkins' February 2003 discharge from his position, and ordering the District to reinstate him "to his former position with reinstatement of seniority rights ... back pay and interest on back pay ..., retroactive to February 7, 2003."

On May 11, 2004, the trial court docketed an order granting the District's motion to alter or amend the judgment. The order rescinded its previous directive "restoring Plaintiff to his job in the [DOC]," and instead, mandated "eighteen (18) months salary as an award of front pay in lieu of restoration."[2] In an order and judgment docketed on August 6, 2004, the trial court reaffirmed the $35,000 jury award (with interest); awarded back pay (with interest) from February 7, 2003 to May 5, 2004, and beginning on May 5,

2004, front pay equivalent to eighteen months salary (with interest); and the order granted Mr. Watkins' second and third motions for attorneys' fees and costs. The order contained two dollar amounts— $152,882.88 and $6,856.00. The court issued an additional order, docketed on August 12, 2004, awarding Mr. Watkins $9,532.00 in response to his fourth attorneys' fees motion, seeking $17,199.05, for additional fees.

On appeal, Mr. Watkins seeks reversal of the trial court's decision to grant him front and back pay in lieu of reinstatement to his former position. He also requests reversal of the court's order denying him the full amount requested in his fourth motion for attorneys' fees. The District filed a cross-appeal challenging the award of front pay and most of the back pay award on the basis of "after-acquired evidence" of Mr. Watkins' misconduct, and his failure to mitigate his damages by seeking other employment.

even if [Mr. Watkins] had not made the protected disclosure."

2. During a hearing on March 5, 2004, the trial court explained its decision to rescind the reinstatement order, stating, in part: "It would appear that [Mr. Watkins] acted with integrity on the job. But his criminal misconduct and his falsification of his credentials again and again and again, that has to be the basis for the public to not have confidence that he would be the right person for that job. And it's, frankly, unimaginable to me that the government wouldn't be able to rectify that situation." In its February 10, 2004, motion to alter or amend judgment, the District maintained that it first learned during Mr. Watkins' April 15, 2003 deposition, that he did not have a college education even though he had certified on District employment applications in 1983 and 1986 that he had two years of college education at the University of Pittsburgh and one year at Allegheny Community College; and further, on his 1992 application for promotion to Lead Legal Instruments Examiner, he declared that he also had completed two years of college at Howard

University. During his deposition he was asked whether he had "any college education," and he responded, "No." The District also asserted in its motion to alter or amend judgment, that despite its September 1997 directive that all DOC employees report "any adverse contact with criminal justice agencies" during their employment with the District, Mr. Watkins failed to report three adverse incidents. These included a 1982 sexual solicitation conviction.

The trial judge expressed the view at the March 5, 2004 hearing that the District could begin the process for terminating Mr. Watkins based on the false information he provided on his employment applications, and that the District "could carry the process through to termination without violating the law." In addition, the judge explained why he selected eighteen months for the amount of front pay for Mr. Watkins: "[W]hat I've used is sort of a fictitious construct of what length of time it would take for the process to work through if the process were to begin, and I selected 18 months." The judge indicated that he could have chosen twelve months or twenty-four months but selected eighteen months.

## ANALYSIS

### Mr. Watkins' Appeal

Mr. Watkins contends that "[t]he substitution of 'front pay' for reinstatement in a WPA case is only appropriate in situations in which the prevailing plaintiff/employee has committed a new offense which disqualifies the plaintiff from further employment, [which is] not the case here." He states that the trial court's action in rescinding his ordered reinstatement "is arbitrary and capricious and contrary to the clear intent of the WPA legislation," because "the legislature has made it clear that the remedy for a WPA violation ... is reinstatement." He claims that the trial court's action not only violated the WPA, but also constituted "a repudiation of the jury verdict" and "the court's previous, correct ... Order." He complains that "[t]he front pay remedy ... is considerably less than the 'make whole' remedy provided by the WPA"; and that the rescinding of the trial court's reinstatement order "leave[s] unclear ... the status of the unlawful termination action." He also argues that the trial court's "substitution of front pay for reinstatement," based upon his 1979, 1983, and 1993 prior contacts with the criminal justice system, "effectively vacated a final arbitration award [dated December 4, 1998], without due process of law, thus violating the Uniform Arbitration Act."

The District argues that the trial court did not abuse its discretion in rescinding its initial order of reinstatement, and further asserts that "[r]einstatement, front pay and back pay are equitable remedies and are neither mandatory nor automatic." The District emphasizes that during a May 5, 2004, hearing on post-trial motions, counsel for Mr. Watkins informed the trial court that "going back to the [DOC] is not necessary and is problematical to [him] for a number of reasons." The District maintains that the trial court took this representation into consideration in directing the front pay remedy. The District further contends that given the responsibilities of the position that Mr. Watkins occupied and the need for integrity, Mr. Watkins' behavior in falsifying his accomplishments on his resume, which the DOC did not discover until 2003, and his prior criminal convictions, not only "rendered him unsuited for a sensitive criminal law enforcement position," but also made reinstatement an inappropriate remedy.

### Standard of Review and the WPA

Generally, in reviewing challenges to equitable relief granted in employment cases such as the one before us, we "consider[ ] whether the [trial court] was clearly erroneous in its factual findings and whether it abused its traditional discretion to locate a just result in light of circumstances peculiar to the case."[3] *Fogg v. Gonzales,* 377 U.S.App. D.C. 148, 153, 492 F.3d 447, 452 (D.C.Cir.2007) (citation and internal quotation marks omitted). The trial court may "order such affirmative action as may be appropriate, which may include, but is not limited to, ... hiring of employees, with or without back pay, ... or any equitable relief as the court deems appropriate...." *Ford Motor Co. v. Equal Employment Opportunity Comm'n,* 458 U.S. 219, 226, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (emphasis omitted). The trial court "has broad discretion to fashion appropriate equitable relief for a[WPA] plaintiff including, but not limited to, reinstatement; this court's review is therefore limited to determining whether the [trial] court abused that discretion." *Webb v. District of Columbia,* 331 U.S.App. D.C. 23, 35, 146 F.3d 964, 976

---

**3.** We take guidance as to the standard of review in this WPA reinstatement case from case law pertaining to Title VII of the Civil Rights Act of 1964.

(1998) (citations and internal quotation marks omitted). "Although reinstatement is certainly a preferred remedy in [WPA] cases, it may not always be an appropriate one. Whether reinstatement is indeed appropriate may be determined only after careful consideration of the circumstances of a particular case." *Id.* (citations omitted). "[A]lthough reinstatement would technically make the plaintiff whole, larger considerations of the relationship between the plaintiff and the employer and, indeed, the environment in which their relationship is situated, militate against ordering reinstatement." 331 U.S.App. D.C. at 35, 146 F.3d at 977. And, a trial court may "reasonably conclude[ ] that reinstatement would not serve the interests of justice where the employee engaged in behavior that could conceivably have given rise to a legitimate discharge under other circumstances." 331 U.S.App. D.C. at 36, 146 F.3d at 977 (quoting *Thomas v. National Football League Players Ass'n*, 327 U.S.App. D.C. 348, 131 F.3d 198, 207 (1997)).

D.C.Code § 1–615.53 (2001) specifies that: "A supervisor shall not threaten to take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." *See Crawford v. District of Columbia*, 891 A.2d 216, 218 (D.C.2006); *see also Zirkle v. District of Columbia*, 830 A.2d 1250, 1258 (D.C. 2003). A "prohibited personnel action" includes "recommended, threatened, or actual termination." D.C.Code § 1–615.52(a)(5). Through a civil action, an employee may "seek[ ] relief and damages, including but not limited to injunction, reinstatement to the same position held before the prohibited personnel action or to an equivalent position, and reinstatement

of . . . seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages, and reasonable costs and attorney fees." D.C.Code § 1–615.54(a); *Crawford, supra,* 891 A.2d at 218.

### Discussion

 Based upon our review of the record in this case, we are not persuaded that the trial court abused its discretion in fashioning an equitable remedy by rescinding its initial order to reinstate Mr. Watkins and substituting, instead, an order for front and back pay. The trial court properly exercised its discretion, *see Johnson v. United States*, 398 A.2d 354 (D.C.1979), by taking into consideration (a) Mr. Watkins' counsel's statement at the May 5, 2004 hearing that his client "has never been adamant about returning to [DOC] for many reasons that [the trial judge] could understand"; that his concerns centered on back pay, benefits medical insurance, and his eligibility for retirement in October 2006 (which front pay might protect); (b) the District's desire to safeguard the integrity of its workforce by not retaining persons who provide false information on their job applications or who have had "adverse contact with criminal justice agencies," resulting in a conviction; (c) the fact that Mr. Watkins occupied "a sensitive position" within DOC relating to the records of inmates; and (d) the likelihood that the District would move to terminate Mr. Watkins for giving false information on his employment applications, a process that likely would take approximately eighteen months.

"Courts [have] recognized that reinstatement [is] not always a viable option, and that an award of front pay as a substitute for reinstatement in such cases [is] a necessary part of the 'make whole' relief mandated by [the legislature]. . . ." [4] *Pollard v.*

---

**4.** "Front pay is simply money awarded for lost compensation during the period between

judgment and reinstatement or in lieu of rein-

*E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001) (citations omitted). Here, the trial court reasonably concluded, in response to the District's motion, that reinstatement was not a viable option. Given the sensitivity of Mr. Watkins' position, including the fact that he was alerting the offices of the District's Inspector General and the United States Attorney to inaccuracies in inmates' records, he conceivably could have been called to testify in court about his work. In that event, he could be impeached not only with his criminal sexual solicitation convictions, but also with his false statements on his three employment applications claiming years of college education even though he had spent no time in college. Contrary to Mr. Watkins' argument, we cannot say that the trial court's reference to using "sort of a fictitious construct" renders his substitute relief "arbitrary and capricious." The judge observed that he had given the matter "a lot of thought." He estimated the time it would take for the District to complete the process to remove Mr. Watkins from his position based on his false statements about his college education on three of his employment applications. The judge reasoned that the process might take between twelve months and twenty-four months and chose eighteen months as a reasonable middle ground. As such, the trial court's ruling could not be described as arbitrary and capricious.

Furthermore, we cannot agree with Mr. Watkins that the trial court's "substitution of front pay for reinstatement" "effectively vacated" an arbitrator's December 4, 1998 opinion and award in his favor. The arbitrator's opinion focused on whether DOC should have terminated Mr. Watkins on January 23, 1998, primarily for failure to disclose his adverse contacts with the

criminal justice system, as required by DOC's 1997 directive. The arbitrator concluded that DOC had not sustained its burden of showing that Mr. Watkins had failed to comply with the directive in a timely manner. This arbitration decision had nothing to do with Mr. Watkins' falsification of information on his employment applications. And, the equitable relief ultimately fashioned by the trial court cannot be considered as repudiating the jury's verdict. That relief did not change the jury's finding that Mr. Watkins made a protected disclosure which was a contributory factor in DOC's action against Mr. Watkins; nor did it take away from Mr. Watkins the jury award of $35,000 for pain and suffering. Neither the arbitrator's 1998 opinion and award, nor the jury's verdict in Mr. Watkins' WPA lawsuit could be interpreted as foreclosing any future effort of DOC to terminate Mr. Watkins for conduct relating to false information on his employment applications that was discovered in April 2003. In addition, we are not persuaded by Mr. Watkins' argument that the trial court's substitute equitable relief repudiated its "previous, correct . . . Order" mandating his reinstatement. The trial court properly exercised its discretion in response to the District's motion to alter or amend the judgment. *See Johnson, supra.*

■ Finally, Mr. Watkins complains that the trial court violated the WPA and abused its discretion in awarding him only $9,532.00 of the $17,199.05 requested in his fourth motion for the award of attorneys' fees and costs, even though he is the prevailing party in this action.[5] The District asserts that the trial court did not abuse its discretion by reducing Mr. Watkins' fourth request for attorneys' fees. In making the reduction, the trial court

statement." *Pollard, supra,* 532 U.S. at 846, 121 S.Ct. 1946.

5. The fourth motion covered the period January 1, 2004 through April 21, 2004.

appears to have relied on the District's opposition to Mr. Watkins' motion which emphasized that part of the requested attorneys' fees related to (a) interlocutory appeals where Mr. Watkins "was not yet a prevailing party"; (b) frivolous motions; and (c) "clerical or secretarial [tasks] billed at an attorney or paralegal rate."

As we have said previously, "[o]ur scope of review [of] an award of attorney[s'] fees is a limited one because disposition of such motions is firmly committed to the informed discretion of the trial court. Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court." *Lively v. Flexible Packaging Ass'n,* 930 A.2d 984, 988 (D.C.2007) (referencing *Maybin v. Stewart,* 885 A.2d 284, 288 (D.C.2005)) (quoting *Steadman v. Steadman,* 514 A.2d 1196, 1200 (D.C.1986)) (internal quotation marks omitted). Mr. Watkins' reliance on *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) is misplaced. He argues that the trial court abused its discretion by not explaining why it reduced his fourth request. *Hensley* involved a class action case pertaining to persons involuntarily confined in the forensic unit of a state hospital. The issue involved in that case was whether a partially prevailing plaintiff could recover attorneys' fees for legal services rendered on unsuccessful claims where the plaintiff had prevailed on some claims. 461 U.S. at 426, 103 S.Ct. 1933. It was in the context of that issue that the court stated: "It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award" in order to "make clear that [the court] has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437, 103 S.Ct. 1933. This case is not in the same posture as *Hensley.* Here, Mr. Watkins prevailed on all issues presented to the jury. Our review of the record, which reveals that the trial court issued a short

order referencing Mr. Watkins' motion, the District's opposition, and "the record herein," satisfies us that the trial court's ruling cannot be characterized as reflecting a "very strong showing of abuse of discretion" requiring reversal. *See Lively, supra,* 930 A.2d at 988.

### The District's Cross–Appeal

In its cross-appeal, the District claims that based upon its "after-acquired evidence of [Mr.] Watkins' dischargeable misconduct," he was "barred [from] any award of front pay and any award of back pay from the date of discovery of the misconduct." Thus, the District maintains, the trial court erred in ordering front pay and all but two months of back pay. The District also contends that "[t]he trial court erred as a matter of law in failing to consider that [Mr.] Watkins did not mitigate his damages by seeking other employment."

In *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Court "question[ed] the legal conclusion ... that after-acquired evidence of wrongdoing which would have resulted in discharge bars employees from any relief under the [Age Discrimination in Employment Act]," and determined that "[t]hat ruling is incorrect." *Id.* at 356, 115 S.Ct. 879. The Court went on to establish the principle that: "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362–63, 115 S.Ct. 879.

■ There are at least two problems with the District's arguments on this record. First, there is a factual issue as to whether the information about the falsification of Mr. Watkins' employment

applications constituted "after-acquired" evidence. During his April 15, 2003 deposition, Mr. Watkins asserted that DOC officials were aware of the false information prior to his deposition, even though the District states that it first learned of the falsification during the April 15 deposition. Second, it is not clear from the record before us that the District would have terminated Mr. Watkins on the falsification "alone" had it been aware of it at the time of its February 2003 termination, which was based on Mr. Watkins' August 2000 conviction on the sexual solicitation charge. *See McKennon,* 513 U.S. at 363, 115 S.Ct. 879. Indeed, Mr. Watkins argues in his reply brief that DOC not only was aware of the falsification prior to his April 15 deposition, but that DOC officials "decided to take no disciplinary action with respect to that issue because the falsifications were not material (no college education was required for the job) and they (DOC) decided to act on other allegations regarding [his] criminal background instead." Under these circumstances, where there is a factual conflict between Mr. Watkins and the District, we cannot say that the trial court committed error under the *McKennon* principle in awarding eighteen months of front pay and back pay from February 7, 2003 to May 5, 2004, the date of the hearing on the District's motion to alter or amend. *See Frazier Indus. Co., Inc. v. National Labor Relations Bd.,* 341 U.S.App. D.C. 393, 403, 213 F.3d 750, 760 (2000) (citing the *McKennon* principle and stating that the employer had "the burden of showing that it *would have* discharged the employee because of the misconduct, not simply that it *could have* done so") (emphasis in original).

█ Finally, we are unconvinced by the District's contention that Mr. Watkins failed to mitigate his damages, and hence, the trial court erred by not denying or reducing any award of front pay or back pay. The record shows that, at trial, Mr. Watkins testified that he had applied for eight jobs after his termination. In addition, the District's employment counselor acknowledged on cross-examination the limitations on Mr. Watkins' ability to find other employment due to his firing after seventeen years of employment in a specialized but narrowly focused job at DOC, and because of his lawsuit against the District which was designed to get his DOC job back. On this record we cannot conclude that the District satisfied its burden to show Mr. Watkins' "failure to take reasonable efforts to mitigate [his] damages by finding alternative employment." *Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights,* 527 A.2d 282, 291 (D.C.1987) (citations omitted).

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court in Appeal Nos. 04–CV–1072 and 04–CV–1186.

*So ordered.*