# District of Columbia
# Court of Appeals

**No. 13-CV-954**

MICHELE TINGLING-CLEMMONS,

Appellant,



FILED

MAR 10 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

CA-1788B-13

DISTRICT OF COLUMBIA and SANDRA ROBINSON,

Appellees.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: GLICKMAN and BECKWITH, *Associate Judges*; and KING, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the Superior Court, dismissing appellant's complaint for failure to state a claim on which relief can be granted, is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 10, 2016.

Opinion by Associate Judge Stephen Glickman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-954

MICHELE TINGLING-CLEMMONS, APPELLANT,

v.

DISTRICT OF COLUMBIA AND SANDRA ROBINSON, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CA-1788B-13)

(Hon. Michael L. Rankin, Trial Judge)

(Argued March 17, 2015                    Decided March 10, 2016)

*David A. Branch* for appellant.

*Holly M. Johnson*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia at the time the brief was filed, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

GLICKMAN, *Associate Judge*:  Michelle Tingling-Clemmons appeals the

dismissal of her complaint alleging violations of the D.C. Whistleblower

Protection Act[1] and the D.C. Human Rights Act[2] and breach of contract.  Her claims arise from the termination of her employment as a Bureau Chief in the District of Columbia Department of Health.  Because we conclude that her complaint does not assert sufficient factual allegations to state a plausible claim for relief, we affirm the judgment of the Superior Court.  We further hold that, in granting the District's motion to dismiss, the court was not obliged to grant appellant leave to file an amended complaint.

## I.

In 2005, appellant and the District of Columbia entered into a settlement of a whistleblower lawsuit she had filed after being terminated in 2002 as the District's State Director for Special Nutrition and Commodity Distribution Programs.  As part of the 2005 settlement, the District agreed to place her in a newly-created Bureau Chief position in the Department of Health (DOH).  The settlement agreement stated that appellant would be compensated in this position as an "MSS [management supervisory service] grade 15/4 at the annual salary of $92,271" and

---

[1] D.C. Code § 1-615.51 *et. seq.* (2012 Repl.).

[2] D.C. Code § 2-1404.01 *et. seq.* (2012 Repl.).

"receive the same health insurance benefits that all MSS employees under the authority of the Mayor receive."

Pursuant to the agreement, the DOH hired appellant in August 2005 as its first Chief of the Nutrition and Physical Fitness Bureau (NPFB). In that capacity, appellant was responsible for overseeing nutrition programs funded by the U.S. Department of Agriculture (USDA). Her salary was paid entirely from USDA funds. She served as NPFB Bureau Chief for seven years, until her employment by the District was terminated in July 2012.

Appellant brought her present suit in March 2013, naming as defendants the District and one of her supervisors in the DOH, Deputy Director for Operations Sandra Robinson. Her complaint claims that the District and Robinson (1) violated the Whistleblower Protection Act by terminating her in retaliation for her disclosures of wrongdoing and her refusal to comply with illegal orders; (2) violated the Human Rights Act by terminating her while retaining similarly situated younger employees; and (3) breached her 2005 settlement agreement by terminating her in 2012 without cause.[3] The District moved to dismiss the

---

[3] As part of appellant's Human Rights Act claim, the complaint appears to allege that she also was discriminatorily terminated on the basis of her sex, but this

*(continued…)*

complaint pursuant to Superior Court Civil Rule 12 (b)(6), arguing that appellant did not plausibly allege claims on which relief could be granted. The Superior Court granted the District's motion.

Appellant alleged in her complaint that after the District re-hired her in 2005 pursuant to their settlement agreement, senior DOH managers "attempted to find ways to divert funds from NPFB programs to use for programs other than the nutrition program services the NPFB was charged with providing." "As a result of [her] protests of and resistance to DOH's unethical and illegal practices with respect to misuse and diverting of funding of NPFB programs," appellant alleged, "a decision was made" in 2012 to terminate her and her senior managers ("two other age-protected women") and move the programs she oversaw to the Office of Aging (an executive branch agency outside the DOH). According to the complaint, younger NPFB employees were not terminated at this time. The complaint does not identify who made the termination decisions. It also provides

---

*(continued…)*
claim is not pursued on appeal and we therefore do not address it. Appellant also complained of having suffered from exposure to a hostile work environment, defamation, and similar injuries, but she does not challenge the dismissal of those claims either.

no information as to the number or the circumstances of the younger employees who were not terminated.

The complaint alleges that appellant protested illegal practices on the following occasions. First, early in her tenure as Bureau Chief, in 2005 or 2006, appellant discovered that an (unnamed) Interim Senior Director in the Maternal and Family Health Administration (MFHA) "was paying an administrative staffer (hired as a political favor) with funds from NPFB." Appellant allegedly "had to advise" the MFHA Interim Senior Deputy Director, the Agency Personnel Officer, and the Chief Operating Officer that "unless staff were doing work explicitly for the USDA programs, it was a violation of USDA regulations, and it was illegal to pay this individual with the agency funds."[4] While the implication of this allegation is that the unidentified staffer in question was not working on a USDA-funded program, the complaint does not directly make that allegation or otherwise specify what work this staffer was performing.

---

[4] Appellant "also had to advise the new senior management to not use NPFB programs and/or vacancies to accommodate any agency interest in filling political favors or keeping employees not meeting nutrition program needs."

Second, at unspecified times from 2007 through 2012, appellant allegedly was directed to work on projects for DOH "while her salary was paid exclusively by the USDA." The work assignments allegedly "violated NPFB's agreement with the USDA," and appellant "protested this violation of the law to senior managers at DOH." Appellant worked on the projects "under protest." The complaint does not describe the nature or magnitude of the work assignments or indicate whether they interfered with appellant's performance of what she believed to be her proper, USDA-funded duties.[5] The complaint also does not specify when or to whom she protested these assignments or the contractual provision they allegedly violated.

Lastly, in 2010, a senior manager at DOH allegedly "suggested diverting UDC's pass-through funding to DOH use." (The complaint does not indicate whether "UDC" refers to the University of the District of Columbia or some other

---

[5] The complaint states only that

> [o]n one occasion, Ms. Tingling-Clemmons was charged with overseeing a new project involving studying whether residents would benefit from corner stores having healthier food selections. The study had been assigned to the DOH by the City Council. Ms. Tingling-Clemmons was eventually directed to develop a statement of work. . . . [She] was told that . . . [the assignment] required her nutrition expertise since it addressed improving nutritional food offerings at corner stores.

entity.)  According to the complaint, appellant "advised DOH management [not otherwise identified] that this would be illegal because the funds were granted to UDC for specific program functions and NPFB's only role was as the pass through funder for it as a state partner program."  The complaint does not allege that the suggestion to divert the funds was implemented.[6]

---

[6] The complaint contains two other allegations on which appellant relies but which we conclude lend no support to her whistleblower claim.  First, the complaint alleges that a senior DOH manager "ignored" appellant's warning that his public disclosure of a "USDA waiver," which allowed the NPFB to provide nutrition education to persons who were not eligible for the Supplemental Nutrition Assistance Program, "could jeopardize" continuation of the waiver.  But the complaint does not allege that appellant reported this matter to anyone or that she believed it to involve wrongdoing of any kind.

Second, the complaint alleges that in 2008, the Department decided to outsource the Commodity Supplemental Food Program to the Greater Washington Urban League (GWUL) in an effort to economize and increase efficiency even though "the individual and collective view" of NPFB staff was that GWUL's proposal "demonstrated a lack of knowledge of how the program operated and the USDA guidelines."  Again, however, while appellant evidently disagreed with the wisdom of this outsourcing decision, the complaint does not allege that she disclosed or protested it, or that she believed it to involve wrongdoing.

**II.**

We review *de novo* the dismissal of a complaint for failure to state a claim on which relief can be granted.[7] "In so doing, we apply the same standard the trial court was required to apply, accepting the [factual] allegations in the complaint as true and viewing all facts and drawing all reasonable inferences in favor of the plaintiff[]."[8]

To pass muster, a complaint must be specific enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[9] It therefore must "allege the elements of a legally viable claim," and its "factual allegations must be enough to raise a right to relief above the speculative level."[10] More specifically, Superior Court Civil Rule 8 (a)'s "short and plain statement" standard requires the complaint to "contain sufficient factual matter, accepted as

---

[7] *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543 (D.C. 2011).

[8] *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011).

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[10] *OneWest Bank, FSB v. Marshall*, 18 A.3d 715, 721 (D.C. 2011) (internal quotation marks and brackets omitted).

true, to state a claim to relief that is plausible on its face."[11]  The requirement of facial plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint falls short of showing a plausible entitlement to relief if it "pleads facts that are merely consistent with a defendant's liability."[12]  To satisfy Rule 8 (a), plaintiffs must "nudge[] their claims across the line from conceivable to plausible."[13]

For the following reasons, we conclude that appellant's whistleblower, discrimination, and breach of contract claims do not show a plausible entitlement to relief.

## A.  The Whistleblower Claim

The Whistleblower Protection Act (WPA) provides that "[a] supervisor shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of

---

[11] *Potomac Dev. Corp.*, 28 A.3d at 544 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

[12] *Id.*

[13] *Bell Atl. Corp.*, 550 U.S. at 570.

an employee's refusal to comply with an illegal order."[14]  A "protected disclosure" includes "any disclosure" to a "supervisor or a public body" of information that the employee "reasonably believes evidences" (1) gross mismanagement, (2) gross misuse or waste of public resources or funds, (3) abuse of authority in connection with the administration of a public program or the execution of a public contract, or (4) a violation of federal, state, or local law, rule, or regulation.[15]  An "illegal order" means "a directive to violate or to assist in violating a federal, state or local law, rule, or regulation."[16]

To state a claim under the WPA, appellant therefore needed to allege facts plausibly showing that she made a protected disclosure or refused to comply with an illegal order, on account of which a supervisor fired her in retaliation.[17]

---

[14] D.C. Code § 1-615.53 (a).

[15] D.C. Code § 1-615.52 (a)(6).  Other "protected disclosures" may involve information evidencing the violation of a government contract or a danger to the public health and safety.  *Id.*

[16] D.C. Code § 1-615.52 (a)(4).

[17] Appellant's disclosure or refusal need only have been a contributing factor leading to the retaliatory action.  *Williams v. District of Columbia*, 9 A.3d 484, 488 (D.C. 2010); *see also* D.C. Code § 1-615.52 (a)(2) (defining "contributing factor" to mean "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision").

The complaint does not allege that appellant refused to obey any illegal order.[18] Rather, it claims she disclosed illegal actions (1) in 2005 or 2006, when she reported that an employee who did not work on any USDA-funded program was being paid with NPFB funds; (2) between 2007 and 2012, when she protested assignments to work on non-USDA funded projects; and (3) in 2010, when she advised Department management that a proposed diversion of pass-through funds would be illegal. In our view, however, appellant's allegations relating to these disclosures did not suffice to show a plausible claim for relief under the WPA.

We find the allegations to be deficient in several respects. For the most part, we consider them too vague and conclusory to show that appellant reasonably believed the actions she protested were in violation of law, USDA regulations, or the conditions imposed by the USDA.[19] But even giving appellant the benefit of

---

[18] On appeal, appellant asserts that she refused to make hiring decisions based on political favors, but the complaint does not allege that she was directed to hire or retain an employee illegally or that she refused to obey such a directive.

[19] We also note that, so far as appears from the complaint, the 2010 proposal to divert funds was never implemented (perhaps because appellant's superiors agreed with her objection to it). The federal whistleblower statute, 5 U.S.C. § 2302 (b)(8), has been held not to protect disclosures concerning unimplemented proposals or potential violations of law. *See Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008) (explaining that the federal statute protects disclosures made on the "reasonable belief that a violation has occurred or is in progress," but not on the "belief that a violation is about to happen upon some future

*(continued…)*

the doubt with respect to the sufficiency of her protected disclosure allegations, her WPA claim is still doomed by its lack of specificity because her factual allegations fail to demonstrate a plausible causal nexus between her disclosures and her termination.

As with other retaliation claims, the requisite "causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."[20] However, appellant failed to allege that the unidentified officials who terminated her knew of her protected disclosures, and her factual allegations do not give rise to a plausible inference of knowledge on their part. And even if such knowledge could be inferred, the complaint fails to allege that appellant's

---

*(continued…)*
contingency"); *see also Herman v. Dep't of Justice*, 193 F.3d 1375, 1380-81 (Fed. Cir. 1999) (disclosure of a "possible" compromise of confidentiality is not protected). We treat these decisions as "instructive" in construing the District's WPA. *See Crawford v. District of Columbia*, 891 A.2d 216, 221 n.12 (D.C. 2006). However, we find it unnecessary in this case to decide whether voicing concern about a proposal that is then abandoned can constitute a protected disclosure under the WPA.

[20] *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 368 (D.C. 1993) (citation omitted).

termination in July 2012 occurred "shortly after" she made her protected disclosures or the relevant supervisors learned of them.[21]

Where temporal proximity between the protected disclosure and the allegedly retaliatory employment action is lacking, the likelihood of a causal connection may be shown by an "intervening pattern of antagonism" directed toward the whistleblowing employee beginning "soon after" the disclosure and continuing to the alleged retaliation.[22] Appellant argues that the following allegations in her complaint show a sufficient pattern of antagonism to justify the inference of causation:

> (1) In 2006, when an NPFB program needed to relocate because its lease expired, "DOH facilities management would not support NPFB's move to a community agency that offered space for a nominal fee . . . in the same neighborhood[,] nor did it identify any other suitable replacement."

> (2) In 2007, DOH senior managers "attempted to take over control of NPFB's automated data system" and require NPFB to participate in a "project to assess

---

[21] *Cf. Johnson v. District of Columbia*, 935 A.2d 1113, 1120 (D.C. 2007) ("[A] stretch of four months realistically cannot constitute temporal proximity in the ordinary sense of that phrase.").

[22] *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993); *see also Blakney v. City of Philadelphia*, 559 Fed. Appx. 183, 186 (3d Cir. 2014).

consolidation of all agency data systems." To serve as the point of contact, senior managers designated an IT staffer whom appellant previously had removed from NPFB due to his poor performance.

(3) From 2007 through 2012, DOH senior management denied travel requests for NPFB staff (specifically, two nutrition managers who sought to attend an annual professional conference for dietitians and nutritionists).

(4) In 2009, Sandra Robinson responded to a congratulatory email that appellant sent to her staff with "a stinging rebuke" of appellant.

(5) In November 2011, appellant was issued a letter of disciplinary action and charged with negligence for allowing an NPFB vendor to continue providing services without a valid contract. This allegedly occurred because the Office of Contracts and Procurement failed to secure the necessary approval of the contract but advised NPFB managers that there was a temporary extension of it.

These five events spread over a six-year period do not reveal any "pattern of antagonism" linking appellant's allegedly protected disclosures to her termination. They certainly bear no resemblance to the "constant barrage" of hostile actions against an employee of which the Third Circuit spoke in *Robinson* and *Blakney*. The first three of these five events were not directed at appellant and evinced no antagonism of any kind toward her. Nor does the complaint allege that these events occurred "soon after" appellant's disclosures.

We hold that appellant's complaint does not plausibly establish that she was terminated in violation of the WPA. Her whistleblower claim was properly dismissed.

## B. The Discrimination Claim

We next address appellant's claim that the District violated the Human Rights Act by terminating her while retaining similarly situated younger employees. To warrant a plausible inference of age discrimination in the absence of an allegation that someone younger replaced her in the same job, appellant needed to allege facts showing that younger persons whose employment situations actually were similar to hers were not terminated.[23] She failed to do this. The complaint contains no information about the younger employees or the positions they occupied.

On the contrary, the allegations in appellant's complaint, sketchy as they are, make her discrimination claim *implausible*. Appellant alleged that she, the Bureau

---

[23] *See Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027-28 (D.C. 2014); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 954 (D.C. 2000) ("The requirement of a showing that similarly situated employees were treated more favorably is imposed when a plaintiff has not alleged that someone replaced her when she was terminated.").

Chief who oversaw the entire NPFB, was terminated along with her two senior managers. The implication, which is not contradicted by any facts alleged in the complaint, is that the retained younger employees occupied subordinate positions in the NPFB. This means that their jobs were not comparable to appellant's, and hence that they and appellant were *not* similarly situated.[24]

We hold that appellant's complaint fails to state a claim of discriminatory termination.

## C.  The Breach of Contract Claim

Appellant's claim that the District breached her 2005 settlement agreement by terminating her in 2012 without cause fails as a matter of law because termination without cause did not constitute a breach of that agreement. The settlement agreement explicitly provided that appellant would be placed in a management supervisory service (MSS) position, and appellant concedes that is

---

[24] *See Little*, 91 A.3d at 1028 ("To show that employees are similarly situated, the plaintiff must demonstrate that all of the relevant aspects of their employment situations are nearly identical. Differences in job title, responsibilities, education, experience, and work record can be used to determine whether two employees are similarly situated.") (internal quotation marks and citations omitted).

what was done.[25]  The Comprehensive Merit Personnel Act (CMPA) establishes that MSS employment is "at-will."[26]  As the implementing regulations confirm, this means that "[a] person appointed to a position in the [MSS] serves at the pleasure of the appointing authority, and may be terminated at any time."[27]  This was the law in 2005 when the parties entered into the settlement agreement. Unless we are given good reason to think otherwise, we therefore must construe the term "MSS" in that agreement as signifying to the parties that the promised employment would be at-will and hence terminable without cause.[28]

---

[25] In her opening brief, appellant explains that "[a]s an MSS employee, [she was] prohibited from challenging her termination through administrative appeals pursuant to [the Comprehensive Merit Personnel Act]."  Brief for Appellant at 18-19.  In her reply brief, however, appellant argues that although the settlement agreement specified she would be compensated at an MSS grade level and receive the same health insurance benefits all MSS employees receive, "there is nothing in the agreement which states that [she] would be placed in a MSS position."  Reply Brief at 4.  We think the settlement agreement's references to appellant's MSS compensation and benefits do make that clear.  Moreover, as discussed below, there was no other lawful option.  Appellant has never claimed that her placement in an MSS position violated the settlement agreement.

[26] D.C. Code § 1-609.54.

[27] 6B DCMR § 3813.1.

[28] *See Double H Hous. Corp. v. Big Wash, Inc.*, 799 A.2d 1195, 1199 (D.C. 2002) ("[L]aws in effect at the time of the making of a contract form a part of the contract as fully as if they had been expressly referred to or incorporated in its terms.") (internal quotation marks omitted).

Nothing in the settlement agreement suggests that the parties meant to create an MSS position for appellant that somehow had the job protections enjoyed by Career-Service employees, requiring the District to show cause to remove her. The agreement does not provide any specific duration for appellant's re-employment.[29] More important, the District officials who made the agreement would not have had the authority to create such a hybrid position.[30] Appellant was being placed in a management employee position,[31] and the CMPA provides (with inapplicable exceptions) that all management employees "shall" be in the MSS.[32] Thus, the settlement agreement could not have been intended or understood to afford appellant Career-Service protection.

---

[29] The general rule in this jurisdiction is that "[a]bsent expression of a specific term of duration in an employment relationship, there is a presumption that the employment is terminable at will by any party at any time." *Reaves-Bey v. Karr*, 840 A.2d 701, 704-05 (D.C. 2004) (internal quotation marks omitted).

[30] *See District of Columbia v. Greene*, 806 A.2d 216, 222 (D.C. 2002) ("A contracting official cannot obligate the District to a contract in excess of his or her actual authority.").

[31] *See* D.C. Code § 1-614.11(5) (defining "management employee" to mean "any person whose functions include responsibility for project management or supervision of staff and the achievement of the project's overall goals and objectives").

[32] D.C. Code § 1-609.52.

Appellant argues that if the settlement agreement is not read to preclude her termination without cause, the promise to place her in a Bureau Chief position would have been illusory, because the District "would have been free to terminate her from her employment immediately after hiring her."[33] We agree with the District that we should reject this "false dichotomy."[34] As the District acknowledges, had it terminated appellant immediately after hiring her as Bureau Chief, it would have been in breach of its implied duty of good faith and fair dealing.[35] But that does not mean the decision to terminate appellant after she had served as Bureau Chief for seven years deprived her of the benefit of her bargain. "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the *justified* expectations of the other party."[36] Given the express and unqualified references to MSS-grade compensation and benefits in the settlement agreement, together with the statute

[33] Brief for Appellant at 20.

[34] Brief for Appellee at 19.

[35] "[A]ll contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (internal quotation marks omitted).

[36] *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013) (emphasis added).

providing that MSS employment is at-will, appellant did not have a justified expectation that she would have Career Service protections and could be terminated only for cause.

Accordingly, we hold that the complaint does not state a breach of contract claim on which relief can be granted.

**III.**

In her opposition to the District's motion to dismiss, appellant argued that her complaint adequately supported her claims. In the alternative, she requested that any dismissal be "without prejudice and/or with leave to amend" so that she could "state in greater detail the factual basis for her contention that she reported illegal and improper acts and was terminated in breach of the settlement agreement and due to her age." Appellant contends that the Superior Court abused its discretion when it dismissed her complaint without addressing this request.

We disagree. Even assuming *arguendo* that a motion for leave to amend was properly before the court,[37] it did not qualify for favorable consideration because appellant did not "state with particularity the grounds" for amending her complaint (or for being allowed to re-file a new complaint in a new action) by proffering the substance of her proposed amendment.[38] (Indeed, even on appeal appellant has not proffered that she could allege additional facts to cure the deficiencies in her complaint.) Furthermore, appellant cannot complain that she was treated unfairly, because under Superior Court Civil Rule 15 (a), she had a right to amend her pleading without leave of court at any time before the District filed a responsive pleading. As a motion to dismiss is not a responsive pleading, appellant thus could have amended her complaint at any time before the trial court rendered its decision.[39] Instead she chose to stand on her complaint as written

---

[37] *But see Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 161 n.18 (D.C. 2000) ("A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of [Civil] Rule 15 (a).") (quoting *Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

[38] *See* Super. Ct. Civ. R. 7(b)(1); *see also, e.g.*, *Flocco*, 752 A.2d at 161 ((holding that trial court did not abuse its discretion by "denying" leave to amend when the plaintiff simply stated, in his opposition to the motion to dismiss, that he would be "willing" to amend his complaint "if the court concluded that it was necessary for him to do so"); *Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999); *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th Cir. 1999); *Government of Guam v. American President Lines*, 28 F.3d 142, 150 (D.C. Cir. 1994); *Wolgin v. Simon*, 722 F.2d 389, 394-95 (8th Cir. 1983).

despite the District's challenge to its sufficiency. Under these circumstances, appellant was not entitled to "wait and see" the trial court's decision before amending her complaint.[40] She was "not entitled to an advisory opinion from the Court informing [her] of the deficiencies of the complaint and then an opportunity to cure those deficiencies."[41]

## IV.

For the foregoing reasons, we affirm the judgment of the Superior Court dismissing appellant's complaint for failure to state a claim on which relief can be granted.

*So ordered.*

---

(continued…)

[39] *Wilson v. Wilson*, 785 A.2d 647, 649 (D.C. 2001).

[40] *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (when a plaintiff "could have amended her complaint as a matter of right, the district court was not required to grant or deny leave to amend prior to dismissal") (reversing on unrelated grounds); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989) (affirming dismissal without ruling on motion to amend because "if [plaintiffs] had any grounds for amending, they could have amended as a matter of right at the time they issued their request [to amend].").

[41] *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (citation omitted).