*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1812

ARCHIE LITTLE, APPELLANT,

V.

DISTRICT OF COLUMBIA WATER AND SEWER
AUTHORITY, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-395-10)

(Hon. Judith Bartnoff, Motion Judge)

(Submitted January 16, 2014                    Decided May 29, 2014)

*David A. Branch* was on the brief for appellant.

*Grace E. Speights* and *Joselyn R. Cuttino* were on the brief for appellees.

Before THOMPSON and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

THOMPSON, *Associate Judge*:  Appellant Archie Little appeals from the Superior Court's grant of summary judgment to defendants/appellees C&E Services, Inc. ("C&E") and the District of Columbia Water and Sewer Authority ("DC Water") on his claims of age discrimination in violation of the District of

Columbia Human Rights Act ("DCHRA")[1] and (as to DC Water) tortious interference with his employment relationship with C&E. We affirm the judgment.

# I.

For several years prior to May 2009, appellant was employed by C&E, which had a series of contracts with DC Water to supply instrumentation technicians to perform work at DC Water facilities. On April 22, 2009, appellant received a letter from Carl Biggs, the president and owner of C&E, thanking appellant "for all the support that [he] . . . provided for C&E services and [DC Water] over the years," acknowledging that appellant "plan[ned] to retire at the end of the [then-current 2004] contract [with DC Water]," and informing him of a planned retirement luncheon to mark the occasion.

Appellant averred in his Complaint that he never indicated an intent to retire in May 2009 or at the end of the contract, but that, during a meeting on May 8, 2009, Biggs demanded his resignation and stated that his last day would be May 13. Appellant further alleged that DC Water "maintained control over C&E

---

[1] D.C. Code § 2-1401 *et seq.* (2012 Repl.).

employees and influenced and directed [C&E] hiring and termination decisions";

and that DC Water supervisors had notified C&E that "in order for [DC Water] to

establish a new contract with [C&E], [appellant] could not be on the job" and that

C&E's "contract would not be renewed if [appellant] was not removed from

employment." The Complaint also alleges that C&E "was acting out [DC Water's

orders]" by "forcing [appellant] to retire." Count I alleges that DC Water and C&E

"forc[ed] [appellant] to vacate his position due to his age" in violation of the

DCHRA, and that he was "terminated due to his age" — 74 years old as of May

2009 — "even though he was more qualified th[a]n several other workers who

remained." Count II alleges that DC Water tortiously interfered with appellant's

employment relationship with C&E.

The parties filed cross-motions for summary judgment. In denying

appellant's motion, the trial court cited the parties' factual dispute about whether

appellant was terminated (as he contends) or retired (as C&E contends[2]), a dispute

that the court determined could not be decided on summary judgment. In granting

---

[2] Biggs testified at his deposition that he had several conversations with appellant during the course of the 2004 contract in which appellant stated that work on that contract would be his "last time working[.]" Paul Ragsdale, C&E's technical sales representative with respect to the DC Water contract, stated in his affidavit that appellant told him "several times . . . that he planned to retire at the end of the [2004] contract."

summary judgment to C&E and DC Water on Count I of the Complaint, the trial court stated that appellant had not presented "any evidence of prejudicial or biased statements made by decision-makers, in a context related to the decision-making process"; that the evidence appellant did present was of "stray remarks by non-decision-makers outside a context related to the decision-making process"; and that appellant had presented no "direct evidence of age discrimination." The court also ruled that appellant had "not even come close to satisfying" his burden of presenting a sufficient evidentiary basis from which an inference of discrimination could be drawn, since he had no evidence that he was let go in lieu of younger workers because of contract overstaffing, and no evidence that he was treated less favorably than similarly situated workers. Finally, in granting summary judgment to DC Water on the tortious interference claim, the court reasoned that as an at-will employee of C&E, appellant could not "maintain a suit for interference with prospective advantage where [his] expectancy was based on an at will relationship." In addition, the court stated that appellant had presented no evidence that anyone at DC Water "ever communicated to Mr. Biggs that [appellant] should not be working on contracts with DC Water[.]"

This appeal followed. Appellant does not challenge the denial of his own summary judgment motion, but contends that the trial court erred in granting summary judgment to C&E and DC Water.

## II.

"In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record, and our standard of review is the same as the trial court's standard in considering the motion for summary judgment." *Young v. U-Haul Co. of District of Columbia*, 11 A.3d 247, 249 (D.C. 2011) (internal quotation marks omitted). Thus, we apply the standard set out in Super. Ct. Civ. R. 56 (c): "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Bruno v. Western Union Fin. Servs., Inc.*, 973 A.2d 713, 717 (D.C. 2009). "Though we view the evidence in the light most favorable to the non-moving party, mere conclusory allegations by the non-moving party are legally insufficient to avoid the entry of summary judgment." *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1281 (D.C. 2002) (citation omitted).

### III.

"The DCHRA makes it an unlawful discriminatory practice for an employer to take adverse action against an employee wholly or partially for a discriminatory reason based upon age." *Furline v. Morrison*, 953 A.2d 344, 352 (D.C. 2008) (ellipses and internal quotation marks omitted).[3] To prove discrimination by direct evidence, "the plaintiff must present evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that *that* . . . attitude was more likely than not a motivating factor in the alleged adverse action." *Jung v. George Washington University*, 875 A.2d 95, 111 (D.C. 2005) (alterations and internal quotation marks omitted; emphasis in the original). This is a "heavy burden," because "not every comment reflecting discriminatory attitudes will support an inference that it was a factor motivating the adverse decision." *Id.* For example, "[s]tray remarks in the workplace and statements by decision makers

---

[3] D.C. Code § 2-1402.11 (a) (2012 Repl.). We may properly "look[] to federal statutes and case law for guidance in deciding cases under the D.C. Human Rights Act." *Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 869 n.3 (D.C. 1997).

that are unrelated to the decision making process are not considered sufficient to satisfy the direct evidence burden." *Id.*

As described above, the trial court found that appellant had presented no "direct evidence of age discrimination" and no evidence of "prejudicial or biased statements made by decision-makers, in a context related to the decision-making process." We note that the court did not refer to appellant's allegation in the Complaint that Biggs "told him that he planned to hire a much younger man for [appellant's] position," or to appellant's deposition testimony that Biggs told him that C&E was "probably going to go with younger people at the next contract" (a statement that Biggs denied making). Had appellant cited these putative statements as direct evidence that C&E acted with a discriminatory motive, the trial court possibly would have treated them as evidence of age-related *animus*. Remarkably, however, appellant did not cite these putative statements in any of his summary judgment papers — either in his own brief in support of his motion for summary judgment, in his Statement of Undisputed Material Facts, or in his opposition to appellees' motions. Therefore, even assuming *arguendo* that the putative statements were direct evidence of age discrimination (i.e., were direct evidence that, as appellant alleges, "Biggs considered DC Water employees' age-based *animus* in terminating" him), we cannot conclude that appellant's deposition

testimony precluded the trial court from granting summary judgment for appellees. It was "not the burden of the trial court to search the record, unaided by counsel, to determine whether summary judgment [was] proper." *Vessels v. District of Columbia*, 531 A.2d 1016, 1019 (D.C. 1987) (internal quotation marks omitted); *see also id.* at 1019 n.7 ("[W]here all parties participated in bringing what they felt were the significant factual issues to the court's attention, the court may expect counsel not to completely overlook a genuine issue."). And, although our review is *de* novo, in his briefs filed in this court, appellant again has not cited Biggs's putative statements about hiring a younger worker or workers. We can only assume that appellant has abandoned his assertion that Biggs made such any such statements.[4]

Considering the evidence that appellant did bring to the trial court's attention and emphasizes again on appeal, we agree with the trial court that appellant presented no direct evidence of age discrimination by decision makers. Appellant relies on the deposition testimony of DC Water employee Timothy Smith, who testified that he heard fellow DC Water employee Edwin Yaniga refer to appellant

---

[4] *Cf. Ham v. City of Atlanta*, 386 F. App'x 899, 907 (11th Cir. 2010) ("Although [Title VII defendant], during his deposition, expressed dissatisfaction with [plaintiff's] behavior, he does not cite this in his appellate brief as a reason for failing to promote [plaintiff]. Thus, [defendant] has abandoned any such argument.").

as "the old man" and say that he did not want appellant on the contract. Appellant also relies on the deposition testimony of DC Water employee William Jeffrey Washington, Sr., who testified that "first-line supervisors" at DC Water, including Bill Adams, wanted appellant off the contract because they didn't like him; further testified that he heard Adams say that "[w]e just need to get [appellant's] old butt down here and get him off the job"; and described "the animosity that resided [among the supervisors] toward[] [appellant]."

We agree with the trial court that the "old man" and "old butt" remarks "appear to be the type of stray remarks that do not suffice as direct evidence of discrimination." Moreover, appellant acknowledged during his deposition that Adams' and Yaniga's dislike for him had to do with matters that "wouldn't have directly involved my age[.]" For example, appellant, who had been employed directly by DC Water as a supervisor before he left to work for C&E, testified at his deposition that people at DC Water "had a grudge against the way I operated because I was straightup" and "had an issue with me [because of how] I run the outfit when I was at [DC Water.]" Appellant also described a confrontation, a month or two before May 2009, during which Adams pushed him, which confrontation appellant attributed to Adams's having a "grudge against [appellant] for what [appellant] did as the division chief" at DC Water: appellant gave Smith a

job that Adams wanted. Appellant expressly acknowledged that Adams "didn't want [appellant] on the 2009 contract because he didn't like [appellant] because [appellant] gave the job to Mr. Smith." Appellant also agreed that Yaniga was jealous of him and was concerned that he might try to come back to DC Water.

Appellant emphasizes Smith's deposition testimony that Ragsdale, C&E's representative with respect to the DC Water contract, knew that Yaniga "didn't want [appellant] back."[5] However, as the trial court noted, appellant presented no evidence that Ragsdale conveyed to Biggs — the "one person" at C&E who appellant claims discriminated against him based on his age — any information about DC Water employees wanting appellant "moved off the contract" because of his age or any other reason. Biggs denied having been told that anyone at DC Water wanted appellant off the contract, and appellant could not avoid summary judgment by asserting (as he did in his Statement of Undisputed Material Facts) merely that Ragsdale generally "communicated with . . . Biggs regarding the [DC Water] contract."[6]

---

[5] Smith testified that Yaniga "alluded to that he didn't think [appellant] was up to date on certain things, technical-wise, and that he didn't need to be back."

[6] This is especially so since appellant acknowledged during his deposition that Biggs was not made aware of everything that happened regarding work under the 2004 contract. He testified that even though Ragsdale would have known

(continued…)

For all the foregoing reasons, we agree with the trial court that appellant did not produce direct evidence sufficient to permit a jury to find that a discriminatory attitude was more likely than not a motivating factor in his (alleged) termination.[7]

Nor did appellant present circumstantial evidence from which an inference of age discrimination could fairly be drawn. In analyzing claims of discrimination based on circumstantial evidence, "we employ the three part, burden-shifting test articulated by the Supreme Court for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Hollins v. Federal Nat'l Mortg. Ass'n*, 760 A.2d

---

(…continued)

about "the move [of the contract worksite] from Bryant Street to Blue Plains," appellant did not believe Biggs was aware of it "because that conversation might never have got to him."

[7] Quite the contrary of meeting that "heavy burden," appellant testified in his deposition that Biggs hired him in 2003 when he was sixty-seven years old and rehired him (when he was nearly sixty-eight years old) for the 2004 Contract. *Cf. Clark v. Hess Trucking Co.*, 879 F. Supp. 524, 532 (W.D. Pa. 1995) (granting summary judgment in favor of defendant employer on discrimination claim where the supervisor who fired the plaintiff "was the same man who originally hired" him). During his deposition, appellant could not recall anyone at C&E making any comments to him about his age other than the comment — which appellant said was made by "more than one" person — "Archie, you do more work than any of the other people at your age[.]" Appellant also testified that C&E employed another older worker, Ragsdale, who was about three years younger than appellant. Appellant further testified that C&E, too, employed an older worker: a Mr. Vandosa, who was older than Ragsdale but younger than appellant.

563, 571 (D.C. 2000). Under that test, the complainant first bears the burden of "mak[ing] a prima facie showing of discrimination . . . by a preponderance of the evidence," thereby "rais[ing] a presumption that the employer violated the DCHRA." *Furline*, 953 A.2d at 352.[8]

To establish a prima facie case of discriminatory termination, the plaintiff must demonstrate that "1) he is a member of a protected class; 2) he suffered an adverse employment action; and 3) the circumstances give rise to an inference of discrimination." *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011). To warrant that inference "in the absence of an allegation that someone ha[s] replaced him in the same job, [he is] required to show that the jobs of one or more persons who were not members of the protected class, and who had jobs similar to his, had not been terminated." *McFarland v. George Washington Univ.*, 935 A.2d 337, 352 (D.C. 2007) (emphasis and brackets omitted); *Shah v.*

---

[8] The burden then shifts to the employer, which is "oblig[ated] to rebut [this presumption] by articulating a legitimate, non-discriminatory reason for the challenged personnel decision." *Furline*, 953 A.2d at 352. "The employer can satisfy its burden by producing admissible evidence from which the trier of fact can rationally conclude that the employment action was not motivated by discriminatory animus." *Hollins*, 760 A.2d at 571 (brackets and internal quotation marks omitted). If the employer does so, "the burden shifts back to the employee to prove, again by a preponderance of the evidence, that the employer's stated justification for its action was not its true reason but was in fact merely a pretext to disguise a discriminatory practice." *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993) (internal quotation marks omitted).

*General Elec. Co.*, 816 F.2d 264, 268 (6th Cir. 1987) ("[I]ndividual disparate treatment cases generally require indirect evidence from which an inference of discriminatory motive may be drawn, namely, comparative evidence demonstrating that the treatment of the plaintiff differs from that accorded to otherwise similarly situated individuals who are not within the plaintiff's protected group.") (ellipses and internal quotation marks omitted).  "To show that employees are similarly situated, the plaintiff must demonstrate that all of the relevant aspects of their employment situations are nearly identical." *McFarland*, 935 A.2d at 353 (brackets and internal quotation marks omitted).  "Differences in job title, responsibilities, education, experience, and work record can be used to determine whether two employees are similarly situated." *Id.* "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) ("[T]he plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'").

Here, the parties do not dispute that appellant, who was seventy-three at the end of his employment with C&E, is a member of a protected class.  Whether appellant was terminated and thus suffered an adverse employment action is

disputed, but even if it is assumed *arguendo* that appellant was terminated, we agree with the trial court that appellees nevertheless were entitled to summary judgment on Count I. That is because appellant failed to make a showing that he was accorded treatment that differed from that accorded to similarly situated, but younger, individuals. He thus did not make out a *prima facie* case of age discrimination, which was required to enable him to avoid summary judgment. *See Cain v. Reinoso,* 43 A.3d 302, 313 (D.C. 2012) (explaining that "a *prima facie* case plus sufficient evidence to reject the employer's explanation" generally will suffice to overcome a motion for summary judgment).

In his summary judgment papers, appellant highlighted the fact that in January and February of 2009, C&E hired two additional employees (Jerome Kelly and John Moylan) to work on the 2004 Contract. He asserted that the result was that the contract was "overmanned"; that it became necessary for C&E to terminate employees; and that "[w]hen a contract[] [worker] must be removed due to [the contract] being overmanned, the first person hired is the last person fired, and the last person hired is the first to be let go." Appellant relied on the evidence that he was "the only C&E employee terminated from the 2004 contract," and that younger C&E employees remained even though none of them was hired prior to appellant.

However, as the trial court observed, appellant "admit[ted] that he did not know the staffing levels on the contract, and . . . provided no evidence that the contract was overstaffed, apart from his own bald assertion and some general speculation by other employees who also had no knowledge of the actual staffing levels." Appellant also offered no "evidence of any established last-hired, first-fired practice of C&E, beyond the union contract." He could not show that in its treatment of him, C&E discriminatorily and anomalously departed from a policy that applied to union workers, because "he was not a member of the union."

Further, the record indicates numerous ways in which appellant's situation was dissimilar to that of other C&E employees who continued to work for C&E on the DC Water contract after he was terminated. As already described, appellant described the physical altercation between him and Adams, and Smith testified about an expressed concern that appellant was not "up to date on certain things, technical-wise[.]" Appellant has presented no evidence that other C&E employees had experienced similar difficulties or had engendered similar concerns.[9] In

---

[9] *Cf. Wallace v. Eckert, Seamans, Cherin & Mellot, LLC*, 57 A.3d 943, 957 (D.C. 2012) (requiring a plaintiff to show that "employees were retained in spite of shortcomings or transgressions similar to [that of the plaintiff]"); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (where appellant

(continued…)

addition, the parties agree that, other than appellant's supervisor, appellant was the only instrumentation technician working for C&E on the DC Water contract who held an ISA Level III Certification. Presumably as a result, appellant was paid at a "supervisor rate" — $2.00 per hour more than the other technicians — "making him the highest paid technician on the 2004 Contract." That was the case at the time appellant received Biggs's April 2009 letter, a time when all of the option years for the 2004 DC Water Contract had been exercised, the contract was set to end on May 13, 2009, and — according to Biggs's undisputed testimony — C&E was about to embark on work for DC Water on a "week-to-week" or "month-to-month" basis, with the risk of not getting paid for the work that it did. As to C&E's most recent hires to work on the DC Water contract, appellant has not disputed Biggs's statement in his affidavit that, at DC Water's request, C&E hired Moylan, who (unlike appellant) has a degree in mechanical engineering, and whom DC Water "specifically needed" for his expertise in "programmable logic control." Biggs also averred that DC Water requested that C&E hire Kelly, who (unlike appellant) had only a Level II ISA certification. In short, neither Moylan nor Kelly was similarly situated to appellant, and the fact that they were hired a few months before appellant was let go does not raise a legitimate inference of discrimination.

---

(…continued)

had "difficulty getting along with others in the firm," and appellant's former coworker did not share this difficulty, the two were not similarly situated).

**IV.**

Citing this court's opinion in *McManus v. MCI Communications Corp.*, 748 A.2d 949 (D.C. 2009), the trial court ruled that because appellant was an at-will employee and acknowledged that he did not have a contract with C&E, he could not proceed on a claim of tortious interference with a contractual relationship *or* a claim of tortious interference with a prospective business advantage. Understandably, appellant does not press the former of those causes of action,[10] but argues that *McManus* left open the issue of whether an at-will employee may pursue the latter cause of action. Appellant appears to be correct that this court did not resolve that issue in *McManus*.[11] However, we need not definitively decide the point, because we can affirm the grant of summary judgment as to Count II on an alternative basis.

---

[10] "[A]s an at-will employee, appellant did not have a contractual employment relationship []he could use as the basis for a suit for tort[i]ous interference with a contractual relationship." *McManus*, 748 A.2d at 957; *but see Sorells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989) (affirming judgment in favor of at-will employee who had an employment contract with her employer on her interference-with-contractual-relations claim against a former supervisor who acted maliciously in procuring her termination).

[11] *See McManus*, 748 A.2d at 957 ("This court never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now.").

"To make out a prima facie case of intentional interference with business relations, the plaintiff must prove: (1) existence of a . . . business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." *Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (internal quotation marks omitted). Here, appellant failed to present evidence sufficient to create a genuine issue of material fact with respect to his claim that a DC Water employee or employees took action that constituted interference with his employment relationship with C&E and caused his termination. Appellant testified at his deposition that he did not know whether anyone from DC Water asked that he be removed from his job. We agree with the trial court that there also is no evidence in the record "that anyone at DC Water ever communicated to Mr. Biggs that [appellant] should not be working on contracts with DC Water or that Mr. Biggs was aware of any negative comments about [appellant] by anyone at DC Water, if such comments were made." Although the statements by some DC Water employees (that they wanted to get appellant "off the job") perhaps were evidence of their *intent* to interfere with appellant's business relationship with C&E, what is missing from the record is any

evidence that Biggs was ever made aware of these statements and that they caused his (alleged) termination.[12]

## V.

For the foregoing reasons, the Superior Court's grant of summary judgment in favor of C&E and DC Water is

*Affirmed.*

---

[12] We note, too, that "it is axiomatic that an employer cannot interfere with its own contract." *McManus*, 748 A.2d at 958. Thus, a demand by DC Water that appellant not work at DC Water would not appear to state a claim for tortious interference.

We also see in the record no evidence that DC Water employees knew that removing appellant from work on the DC Water contract would result in his termination from employment with C&E. Smith testified (and appellant has not denied) that appellant once told him that C&E might have another job for him if he did not work on the 2003 DC Water contract, and Biggs's undisputed deposition testimony was that C&E had contracts larger than the DC Water contract. We note further Smith's testimony that he asked that appellant be removed from the *2003* DC Water contract because he failed to follow directions, but that this request was not honored, and appellant continued to work on the contract. Thus, the record provides no basis for assuming that if there was a request by someone at DC Water to take appellant off the contract, C&E would have complied with that request, and would have done so by terminating appellant's employment with C&E.