# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 3, 2014        Decided December 16, 2014

No. 13-7154

STEPHEN D. METZ,
APPELLANT

v.

BAE SYSTEMS TECHNOLOGY SOLUTIONS & SERVICES INC.,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01694)

*Peter C. Cohen* argued the cause and filed the briefs for appellant.

*Peter Buscemi* argued the cause for appellee. With him on the brief were *Robert J. Smith*, *Joyce E. Taber*, and *Lincoln O. Bisbee*.

Before: GARLAND, *Chief Judge*, TATEL, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Appellant Stephen Metz has presented us with an unusual proposition. Although he brought this diversity case in federal district court, he would like to have the dispositive question that he raises on appeal decided not by this court, but by the District of Columbia Court of Appeals. To accomplish this, he asks us to certify that question of District of Columbia law to the Court of Appeals, without addressing the question ourselves. Because the question on which Metz seeks certification is neither genuinely uncertain nor of sufficient public importance to warrant burdening the D.C. Court of Appeals, we deny his request. And because Metz does not ask us to independently review the district court's resolution of that question, we affirm the judgment of that court.

I

Stephen Metz worked at BAE Systems Technology Solutions & Services, a defense contractor, for more than four years. There, he led an engineering and technical services division that supported long-term acquisition programs for the U.S. Navy. In February 2012, the company laid him off. A short time later, he applied for a position at ALION Science and Technology Corporation, another defense contractor that sometimes teamed with BAE on defense projects. ALION made Metz an offer, and he began working there on May 14, 2012.

According to Metz' complaint,[1] when BAE learned he was working for ALION, BAE threatened Metz and ALION with legal action on the ground that Metz' employment with ALION violated a one-year non-compete agreement between Metz and

---

[1]Because this case comes to us on appeal from the dismissal of Metz' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept the complaint's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

BAE. ALION responded that it did not view itself as BAE's competitor, and it offered to take steps to ensure that there would be no competition between the two companies as a result of Metz' employment with ALION. BAE nonetheless continued to insist that ALION cease employing Metz. Finally, on June 15, 2012, fearing both legal action and economic retaliation from BAE, ALION terminated Metz' employment.

On October 16, 2012, Metz brought suit in the U.S. District Court for the District of Columbia, alleging that BAE had tortiously interfered with his at-will employment arrangement with ALION in violation of District of Columbia law.[2] The amended complaint based federal jurisdiction on the diversity of citizenship of the parties. *See* Am. Compl. ¶¶ 11-12.[3] BAE moved to dismiss Metz' complaint, arguing that Metz could not state a claim for tortious interference with contractual relations because the District of Columbia does not recognize such a claim when the plaintiff was an employee at will. The district court granted BAE's motion, *Metz v. BAE Sys. Tech. Solutions & Servs., Inc.*, 979 F. Supp. 2d 26 (D.D.C. 2013), and Metz timely appealed the dismissal of his tortious interference claim.

On appeal, Metz does not argue the merits of that claim and does not ask us to reverse the judgment of the district court based on our view of the merits. Instead, he asks only that we

---

[2]The complaint also contained four other claims, two of which Metz voluntarily dismissed and two of which the district court dismissed. *See Metz v. BAE Sys. Tech. Solutions & Servs., Inc.*, 979 F. Supp. 2d 26, 29-33 (D.D.C. 2013). Metz does not raise any of those claims on this appeal.

[3]The complaint also cited 28 U.S.C. § 2201(a) as establishing the district court's "jurisdiction to issue declaratory relief." Am. Compl. ¶ 13. *But see infra* note 8.

certify to the D.C. Court of Appeals the question of whether District of Columbia law "recognize[s] a cause of action for tortious interference with at will employment against a third party former employer who procured the plaintiff's discharge from his new employer." Metz Br. 2.[4] Reversal will only be required, he explains, if we do so certify and if, in response, the D.C. Court of Appeals holds that the District recognizes such a cause of action. By the same token, Metz acknowledges that, if we decline to certify the question, we must affirm the judgment of the district court. *See* Oral Arg. Recording 12:35. Accordingly, we limit our consideration to the issue of certification.

II

A federal court sitting in diversity must apply the substantive law of the jurisdiction in which it sits. *Erie R.R. Co.*

---

[4]That is the core question posed by Metz. He also proposes several embellishments, including asking whether the District recognizes such a cause of action when the third-party former employer procured the discharge "for an improper or illegal purpose." Metz Br. 2. We do not discuss that embellishment, however, because just as there is no decision of the D.C. Court of Appeals finding "a cause of action for tortious interference with at will employment against a third party former employer who procured the plaintiff's discharge from his new employer," there is no decision finding such a cause of action where a third party procured the discharge "for an improper or illegal purpose," *id.* Accordingly, like the core question discussed in the text of this opinion, the embellished question depends upon the possibility that the D.C. Court of Appeals might adopt an exception to its "general rule . . . that a tortious interference claim may not proceed with respect to at will employment." Reply Br. 3-4; *see infra* Part II. And we have held that such a mere possibility is insufficient to warrant certification of a question to that court. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012).

*v. Tompkins*, 304 U.S. 64 (1938). This rule applies to a court sitting in the District of Columbia. *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). "Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case." *Id.* Ordinarily, we fulfill this obligation by looking to the published opinions of the D.C. Court of Appeals. *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998).

Under the D.C. Code, however, the

> District of Columbia Court of Appeals may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . if there are involved in any proceeding before any such certifying court questions of law of the District of Columbia which may be determinative . . . and as to which it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals.

D.C. Code § 11-723(a). "The use of such certification procedures 'in a given case rests in the sound discretion of the federal court.'" *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 563 (D.C. Cir. 1993) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Three considerations lead us to decline to certify the question that Metz poses.

1. The "'most important consideration'" is that the question upon which Metz seeks certification is not "'genuinely uncertain.'" *Joy*, 999 F.2d at 563 (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)); *see Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 34 (D.C. Cir. 2004). Metz maintains that it is uncertain whether District of Columbia law permits a claim of tortious interference with at-will

employment against a third party to the at-will arrangement because there is a conflict between two sets of D.C. Court of Appeals cases.  He acknowledges that three decisions "establish a general rule in the District of Columbia that a tortious interference claim may not proceed with respect to at will employment."  Reply Br. 3-4; *see Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 806-08 (D.C. 2003); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000); *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 432-33 (D.C. 1996).  Nonetheless, Metz contends that three other decisions keep "the door open" to such claims when the interference is perpetrated by a third party to the at-will arrangement.  Reply Br. 13; *see Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020 (D.C. 2014); *CASCO Marina Dev., LLC v. D.C. Redev. Land Agency*, 834 A.2d 77 (D.C. 2003); *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989).  We do not agree that the state of the law is "genuinely uncertain."

The three cases that Metz acknowledges as contrary to his view rest their holdings on the principle that an at-will employee does not have an employment *contract* for purposes of tortious interference with contractual relations.  *See Futrell*, 816 A.2d at 807 ("Futrell was an at-will management employee, who could be discharged at any time and for any non-discriminatory reason. . . . Given our conclusion that no employment contract -- express or implied -- existed between Futrell and [her employer], she cannot establish a prima facie case of intentional interference with contractual relations . . . ."); *McManus*, 748 A.2d at 957 ("It is clear that, as an at-will employee, appellant did not have a contractual employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship."); *Bible Way*, 680 A.2d at 433 ("[Plaintiffs] failed to cite in the complaint any facts which, if taken as true, would rebut the presumption of at-will

employment. . . . Accordingly, there was no basis for either a breach of contract or a tortious interference with contract claim . . . .").  Moreover, two of the three cases involved suits against third parties to the plaintiffs' employment arrangements.  *See Futrell*, 816 A.2d at 798, 807-08; *McManus*, 748 A.2d at 957-58.[5]

Conversely, two of the cases that Metz cites as supporting his contention that this principle has an exception when the case is brought against a third party do so only by implication.  Although each allowed such a claim for tortious interference with an agreement that was terminable at will, neither addressed the question of whether the at-will nature of the agreement precluded the claim.  *See Sorrells*, 565 A.2d at 290-91 (holding only that, although a party cannot interfere with its own contract, a supervisor who is not an officer of a plaintiff's employer is not a party to the plaintiff's employment contract and therefore can interfere with it); *CASCO*, 834 A.2d at 83-84 (reciting the result in *Sorrells*, but relying on it only for the proposition that inducing a failure to perform, rather than a breach of, a contract is sufficient to establish an element of tortious interference).[6]

---

[5]One of the *Futrell* defendants was a bonding company, a third party to the plaintiff's employment agreement.  *Futrell*, 816 A.2d at 798, 807-08.  Two of the *McManus* defendants were the plaintiff-employee's supervisors, *McManus*, 748 A.2d at 951-52, a position the D.C. Court of Appeals regards as not a party to a subordinate's employment agreement, *see Sorrells*, 565 A.2d at 290.

[6]Metz acknowledges that "the supervisor in *Sorrells*, for reasons unknown, did not directly invoke the at will status of the plaintiff as a defense to the claim," but argues that "the *effect* of *Sorrells*" was to permit the claim to proceed.  Reply Br. 7.  Metz also acknowledges that "*Casco* was not an at will employment case," but submits that it "is *Casco*'s discussion of *Sorrells* that matters."  *Id.* at 9.

8

The third case that Metz cites, *Little v. D.C. Water & Sewer Authority*, does not support his contention at all. To the contrary, *Little* noted that the appellant in that case "understandably" did not press his claim for tortious interference with contractual relations, citing *McManus* for the proposition that "'[a]s an at-will employee, appellant did not have a contractual employment relationship []he could use as the basis for a suit for tortious interference with a contractual relationship.'" *Little*, 91 A.3d at 1029 & n.10 (quoting *McManus*, 748 A.2d at 957). Although *Little* followed its citation to *McManus* with a "*but see*" citation to *Sorrells*, the *Little* court's treatment of the two cases indicates that it regarded *McManus* as controlling. *See id.*

Accordingly, rather than being genuinely uncertain, it is "reasonably clear," *Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998), that the general rule in the District of Columbia is that an at-will employment agreement cannot form the basis of a claim of tortious interference with contractual relations. *See United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1047 (D.C. Cir. 2011) (explaining that local law is not "genuinely uncertain with respect to a dispositive question . . . . [i]f . . . there is a discernible path for the court to follow" (quoting *Dial A Car*, 132 F.3d at 746)). Although *Little* appears to recognize that the *result* in *Sorrells* is inconsistent with that rule, no D.C. case *holds* to the contrary. Metz' certification request is thus based merely upon the "possibility that the D.C. Court of Appeals might adopt [an] exception[] to its general rule" -- a ground we have held insufficient to warrant certification. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012).

Needless to say, nothing we have said would preclude the D.C. Court of Appeals from adopting the exception Metz seeks -- or from changing its rule altogether. It might be argued, for

example, that until a contract terminable at will has been terminated, "the contract is valid and subsisting, and the defendant may not improperly interfere with it." RESTATEMENT (SECOND) OF TORTS § 766 cmt. g (1979).[7] But the possibility that the D.C. Court of Appeals might reverse its previous course if presented with the question anew does not render the question "genuinely uncertain."

2. Not only is the question Metz poses insufficiently uncertain, it is also insufficiently significant. In the past, we have granted certification where a "'case is one of extreme public importance' in which the District of Columbia has a 'substantial interest.'" *Joy*, 999 F.2d at 564 (quoting *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 884 (D.C. Cir. 1985)); *see Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002). We have also certified where we found the question to be on "a matter of public importance, in which the District of Columbia has a substantial interest," without insisting that the importance be "extreme." *Schuchart*, 365 F.3d at 37 (citations omitted); *see also DeBerry v. First Gov't Mortg. & Investors Corp.*, 170 F.3d 1105, 1110 (D.C. Cir. 1999) (certifying a question where "the answer will have significant effects on District of Columbia mortgage finance practice"). But however described, this factor demands that the District's interest be

---

[7] *See Haddle v. Garrison*, 525 U.S. 121, 127 (1998) ("Th[e] protection against third-party interference with at-will employment relations is still afforded by state law today."); KEETON ET AL., PROSSER AND KEETON ON TORTS § 129, at 995-96 (5th ed. 1984) ("[E]minent legal writers to the contrary notwithstanding, the overwhelming majority of the cases have held that interference with employment or other contracts terminable at will is actionable, since until it is terminated the contract is a subsisting relation, of value to the plaintiff, and presumably to continue in effect." (footnotes omitted)).

something more than that the question is one of District law, else every diversity case would come within its compass. Yet, Metz' briefs contain no argument whatsoever that the question he poses is one of substantial interest to the District.

Moreover, an even higher threshold of importance to the District applies here. As Metz acknowledges, on his theory -- that there are two lines of conflicting District precedent on the question -- the only way the D.C. Court of Appeals could resolve the alleged uncertainty would be to hear the case en banc. Oral Arg. Recording 25:23. And we do not discern any interest sufficiently important to impose that kind of burden on the D.C. Court of Appeals.

3. Still another factor counsels against granting certification in this case. The plaintiff "chose to litigate" this case in federal district court, "fully aware" of the two lines of District precedent that he sees as conflicting. *Tidler*, 851 F.2d at 426. And as we have said before, "'[o]ne who chooses the federal courts in diversity actions is in a peculiarly poor position to seek certification.'" *Id.* (quoting *Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977)); *see* WRIGHT, MILLER, COOPER & AMAR, FEDERAL PRACTICE & PROCEDURE § 4248, at 509 (3d ed. 2007) ("[T]he court should be slow to honor a request for certification from a party who chose to invoke federal jurisdiction.").

This is not to say that we will always decline to certify a question when the requester is a plaintiff who sued in federal district court (or a defendant who removed the case to that court). Indeed, we have certified questions in such circumstances. *See, e.g.*, *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 872-76 (D.C. Cir. 1996) (granting a request to certify by a plaintiff who filed in federal district court). But in this case, the factor is magnified by the manner in

which Metz has attempted to structure his case. Although he filed his suit in federal district court and presented his initial arguments there, he now seeks appellate review only by the D.C. Court of Appeals, expressly declining to ask this court to address the merits of his argument. Metz explains that he adopted this approach because it was more intellectually honest in light of what he perceived as the confused state of District of Columbia law. Oral Arg. Recording 5:03. Although we appreciate Metz' candor, if it were important to have the D.C. Court of Appeals clarify District of Columbia law, he could and should have brought his suit in the Superior Court of the District of Columbia. He did not do so, and we are not inclined to permit parties to so easily mix and match their favorite combinations of trial and appellate courts.[8]

---

[8]In his reply brief and at oral argument, Metz suggested that he brought his suit in federal district court because it contained a federal cause of action, namely a claim for relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act, however, does not "provide a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Moreover, "[i]t is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Id.* (internal quotation marks omitted); *see Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Indeed, Metz' complaint therefore appropriately relies only on 28 U.S.C. § 1332(a) (diversity jurisdiction) as the source of the district court's jurisdiction; it does not cite 28 U.S.C. § 1331 (federal question jurisdiction). *See* Am. Compl. ¶¶ 11-17. Nor did Metz need to file in federal court to obtain declaratory relief; the Superior Court of the District of Columbia has authority to provide such relief as well. *See* D.C. SUP. CT. R. CIV. P. 57 & cmt. (citing D.C. Code. § 11-921).

12

III

For the foregoing reasons, we decline Metz' request to certify his proposed question to the District of Columbia Court of Appeals. Because Metz does not ask us to evaluate the merits of that question ourselves, the district court's judgment is

*Affirmed.*